## SETTLEMENT AGREEMENT

WHEREAS, Universal Health Care Group, Inc. ("*Universal Group*") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 6, 2013;

WHEREAS, Universal Health Care, Inc., Universal Health Insurance Company, Inc., Universal HMO of Texas, Inc., Universal Health Care of Nevada, Inc., Universal Health Care of Georgia, Inc., (collectively the "*Regulated Subsidiaries*") are wholly-owned subsidiaries of Universal Group; and

WHEREAS, Soneet R. Kapila (the "*Trustee*") was duly appointed to serve as Chapter 11 trustee for Universal Group on April 22, 2013; and

WHEREAS, Universal Group is also the sole member of American Managed Care, LLC, ("*AMC*") and as Chapter 11 Trustee for the sole member of AMC, the Trustee filed a Chapter 11 petition for AMC on May 3, 2013; and

WHEREAS, BankUnited, N.A., as Issuing Lender and as Administrative Agent ("*BankUnited*") on behalf of a bank group consisting of Capital Bank Financial Corp., Mercantil Commercebank, N.A., Banco De Credito E Inversiones Miami Branch and Israel Discount Bank of New York (the "*Bank Group*") entered into a credit agreement with Universal Group dated April 6, 2012 for $60 million (the "*Credit Agreement*"); and

WHEREAS, the Credit Agreement was secured by substantially all of the prepetition assets of Universal Group, including Universal Group's ownership interests in the Regulated Subsidiaries; and

WHEREAS, AMC guaranteed the obligations of Universal Group under the Credit Agreement; and

WHEREAS, AMC's guaranty of the Credit Agreement is secured by substantially all of the prepetition assets of AMC; and

WHEREAS, BankUnited, on behalf of the Bank Group have filed secured proofs of claim for approximately $37 million in both the Chapter 11 case of Universal Group and the Chapter 11 case of AMC; and

WHEREAS, the Trustee has filed a provisional objection to BankUnited's claim of lien against the Universal Group's ownership interest in the Regulated Entities (the "*Provisional Objection*"); and

WHEREAS, BankUnited claims a lien against a tax refund to Universal Group in the approximate amount of $5.8 million, plus accrued interest (the "*$5.8 million Tax Refund*"); and

WHEREAS, the $5.8 Million Tax Refund is currently in possession of BankUnited; and

WHEREAS, BankUnited has filed a motion to lift the automatic stay to exercise its security interest against the $5.8 million Tax Refund and objections have been filed by the Trustee and the Florida Department of Financial Services as the receiver for Universal Health Care, Inc. and Universal Health Insurance Company, Inc. (the "*Florida Receiver*"); and

WHEREAS, on October 26, 2012, Universal Group received a tax refund for $11,150,209 (the "*$11 million Tax Refund*"); and

WHEREAS, on October 29, 2012, Universal Group was placed in default of the Credit Agreement and was required to deliver forthwith the $11 million Tax Refund to BankUnited which constituted the cash collateral of the Bank Group; and

WHEREAS, on November 2, 2012, in direct contravention to the mandate of BankUnited and in violation of the Credit Agreement, the $11 million Tax Refund was transferred by Universal Group to Universal Health Care Insurance Company, Inc.; and

WHEREAS, on March 22, 2013, both Universal Health Care, Inc. and Universal Health Care Insurance Company, Inc. were placed into receivership by Order of the First Circuit in and for Leon County, Florida; and

WHEREAS, the $11 million Tax Refund is currently in the possession of the Florida Receiver; and

WHEREAS, Bank Group asserts a security interest in both the $5.8 million Tax Refund and the $11.0 million Tax Refund under Florida law, including Florida Statutes chapter 679, et. seq.; and

WHEREAS, the Trustee contends that the $11.0 million Tax Refund is recoverable as a fraudulent transfer and/or an insider preference and BankUnited contends that it has a valid lien on such recovery; and

WHEREAS, the Bank Group asserts a security interest in the deposits made by Carepoint/Citrus in connection with the failed sale of the stock of the Regulated Subsidiaries; and

WHEREAS, in response to subpoenas from the Trustee BankUnited has produced documents related to the Credit Agreement and all accounts managed by BankUnited and BankUnited Investment, on behalf of Universal Group and the Regulated Subsidiaries; and

WHEREAS, BankUnited, has represented that it has possession and control of the certificated stock of the Regulated Subsidiaries that have issued stock and/or recorded a Form UCC-1 Financing Statement against the Regulated Subsidiaries and non-regulated subsidiaries in which no certificated stock was issued; and

WHEREAS, the Trustee and BankUnited enter into this Settlement Agreement for the purpose of resolving the Provisional Objection and any other disputes or controversies between the Trustee, the Bank Group, Universal Group and AMC under the following terms and conditions:

1.      Approval. This Settlement Agreement is subject to the approval of the United States Bankruptcy Court for the Middle District of Florida, after notice to all parties entitled to notice, under applicable rules and statutes.

2. <u>Validity of Liens</u>. Upon approval of this Settlement Agreement, the Bank Group shall be deemed to have allowed and valid liens against the prepetition assets of Universal Group and AMC, as described in the Credit Agreement, the Security Agreement, the Pledge Agreement and the UCC-1 Financing Statements, subject to the allowed carve-outs set forth in this Settlement Agreement. The extent and the validity of the liens of the Bank Group may only be challenged in the event of a default of this Settlement Agreement. The lien of the Bank Group, however, specifically does not extend to any recoveries by the Trustee under Chapter 5 of the Bankruptcy Code, except as expressly set forth herein, or to recoveries by the Trustee for causes of action belonging to Universal Group or AMC, pursuant to 11 U.S.C. § 541, including any business or other torts arising in favor of Universal Group or AMC. The Order approving this Settlement Agreement shall be in a form acceptable to BankUnited and shall ratify the validity, priority and extent of the Bank Group's liens against Universal Group and AMC as provided for in this paragraph and render, as *res judicata* any such subsequent contests, so long as BankUnited and the Bank Group are not in default of obligations under this Settlement Agreement.

3. <u>Universal Group Carve outs</u>. The Trustee on behalf of the estate of Universal Group shall receive the following carve outs from the liens of the Bank Group:

   a. Absent a separate court approved settlement agreement with the Florida Receiver to the contrary, the Trustee will receive 30% or an amount not to exceed $750,000 from amounts determined due to BankUnited or the Trustee from the $5.8 million Tax Refund.

   b. Absent a separate court approved settlement agreement with the Florida Receiver to the contrary, the Trustee will receive 30% of amounts recovered from the Florida Receiver, with a cap of $3.0 million on the amounts recoverable from the $11.0 million Tax Refund by BankUnited or the Trustee.

   c. The Trustee will receive 15% of any surplus attributable to Universal Group's ownership of each of the Regulated Entities.

   d. The Trustee will receive 5% of any deposit recoveries from Carepoint/Citrus and will share equally with BankUnited on any net recoveries obtained as a result of any consequential damages recovered (the "Carepoint/Citrus Claims").

4. <u>AMC Carve out</u>. The Trustee on behalf of the estate of AMC is entitled to a carve out of 25% of the net proceeds of any sale of the tangible assets owned by AMC, after the payment of all costs of sale and taxes. The Trustee in close consultation with BankUnited will organize and coordinate the sale of the assets owned by AMC.

5. <u>DIP Accounts</u>. BankUnited and the Bank Group will waive liens, if any against any debtor in possession account maintained by the Trustee for Universal Group and for AMC.

3

6. <u>Frozen Accounts</u>. BankUnited will be entitled to stay relief to exercise set off rights against accounts maintained in the name of Universal Group, and frozen during the Chapter 11 case, except that BankUnited will deliver to the Trustee $35,000 from those accounts pursuant to the Bank Group's prior consent to allow the Trustee to use cash collateral.

7. <u>Deficiency Claim</u>. BankUnited will provide the Trustee with a complete accounting of the liquidation of its collateral. To the extent that BankUnited has a deficiency claim (including recovery of all principal, plus interest, fees and costs through the date of the applicable bankruptcy petition), BankUnited will file an amended claim and will be allowed an unsecured claim for the deficiency. To the extent that BankUnited has a surplus after payment of its claim, as filed, the surplus will be paid to the Trustee.

8. <u>Release of Claims</u>. The Trustee, on behalf of the bankruptcy estates of Universal Group and AMC, and BankUnited on behalf of itself, and each member of the Bank Group will execute mutual releases in the form attached hereto of any and all claims by and between them, except those claims and obligations set forth in this Settlement Agreement.

9. <u>Joint Prosecution and Defense</u>. The Trustee and BankUnited will jointly prosecute claims to recover the $5.8 million Tax Refund, the $11.0 million Tax Refund and the Citrus/Carepoint Claims and have entered (or will enter) into a Joint Defense Agreement for that purpose. BankUnited will take the lead in addressing the Carepoint/Citrus Claims. Further, should an action be filed against Carepoint/Citrus for consequential damages as a result of the failed sale of the stock of the Regulated Entities, the firm of GrayRobinson, P.A. shall be engaged through an application under 11 U.S.C. § 327(e) to act as special counsel to the Trustee under an engagement agreement to be determined. The Trustee and BankUnited will work together and cooperate in actions to preserve and protect the surplus value and equity of the Regulated Entities. In this regard, it is understood that the parties may enter into a subsequent agreement regarding the costs and fees associated with these efforts.

10. <u>Jurisdiction</u>. The United States Bankruptcy Court for the Middle District of Florida will retain jurisdiction to enforce or interpret any of the terms of this Settlement Agreement.

Dated: __August 16_____, 2013

UNIVERSAL HEALTH CARE GROUP, INC.

By: _/s/ Soneet Kapila_
Name: Soneet Kapila
Title: Chapter 11 Trustee


AMERICAN MANAGED CARE, LLC

By: _/s/ Soneet Kapila_
Name: Soneet R. Kapila
Title: Chapter 11 Trustee for Universal Health Care Group, Inc., the sole member of American Managed Care, LLC


BANKUNITED, N.A., AS A Lender, ~~as Issuing Lender and as Administrative Agent on behalf of the Lenders~~

By: _/s/ Scott Milchuk_
Name: Scott Milchuk
Title: SVP, Workout and Recovery


CAPITAL BANK FINANCIAL CORP., as Lender

By: _____
Name: _____
Title: _____


MERCANTIL COMMERCEBANK, N.A., as a Lender

By: _____
Name: _____
Title: _____

UNIVERSAL HEALTH CARE GROUP, INC.

By: _____
Name: Soneet Kapila
Title:   Chapter 11 Trustee


AMERICAN MANAGED CARE, LLC

By: _____
Name: Soneet R. Kapila
Title:   Chapter 11 Trustee for Universal Health Care Group, Inc., the sole member of American Managed Care, LLC


BANKUNITED, N.A., AS A Lender, as Issuing Lender and as Administrative Agent on behalf of the Lenders

By: _____
Name: _____
Title: _____


CAPITAL BANK FINANCIAL CORP., as Lender

By: *[signature]*
Name: *Terry Spurlock*
Title: *Senior Vice President*


MERCANTIL COMMERCEBANK, N.A., as a Lender

By: _____
Name: _____
Title: _____

5

UNIVERSAL HEALTH CARE GROUP, INC.

By: _____
Name: Soneet Kapila
Title: Chapter 11 Trustee


AMERICAN MANAGED CARE, LLC

By: _____
Name: Soneet R. Kapila
Title: Chapter 11 Trustee for Universal Health Care Group, Inc., the sole member of American Managed Care, LLC


BANKUNITED, N.A., AS A Lender, as Issuing Lender and as Administrative Agent on behalf of the Lenders

By: _____
Name: _____
Title: _____


CAPITAL BANK FINANCIAL CORP., as Lender

By: _____
Name: _____
Title: _____


MERCANTIL COMMERCEBANK, N.A., as a Lender

By: *[signature]*
Name: Brian Barroso
Title: Vice President

5

BANCO DE CREDITO E INVERSIONES MIAMI BRANCH, as Lender

By: _____
Name: _____
M. GRISEL VEGA
Title: _____
GENERAL MANAGER

ISRAEL DISCOUNT BANK, as Lender

By: _____
Name: _____
Title: _____

BANCO DE CREDITO E INVERSIONES MIAMI BRANCH, as Lender

By: _____
Name: _____
Title: _____


ISRAEL DISCOUNT BANK OF NEW YORK, as Lender

By: _____*signatures*_____
Name: _____ Barry Solomon
Title: _____Richard Miller_____ First Vice President
        Senior Vice President