**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

In re:

UNIVERSAL HEALTH CARE GROUP, INC.,

AMERICAN MANAGED CARE, LLC,

Debtors.

_____/

Chapter 11
Case No. 8:13-bk-01520-KRM

Jointly Administered with
Case No. 8:13-bk-05952-KRM

**MOTION TO APPROVE MEDIATED SETTLEMENT WITH BANKUNITED, N.A.**
**AND THE FLORIDA DEPARTMENT OF FINANCIAL SERVICES,**
**TO SHORTEN TIME FOR CONSIDERATION**
**AND NOTICE OF HEARING**

---

**NOTICE OF HEARING**

NOTICE IS HEREBY GIVEN THAT:

A hearing in this case will be held on **September 12, 2014 at 2:30 PM** in Courtroom 9B, Sam M. Gibbons United States Courthouse, 801 N. Florida Ave., Tampa, FL 33602 before the Honorable K. Rodney May, United States Bankruptcy Judge, to consider and act upon the instant motion and transact such other business that may come before the court.

1. The hearing may be continued upon announcement made in open Court without further notice.

2. Appropriate Attire. You are reminded that Local Rule 5072-1(b)(16) requires that all persons appearing in Court should dress in business attire consistent with their financial abilities. Shorts, sandals, shirts without collars, including tee shirts and tank tops, are not acceptable.

3. Avoid delays at Courthouse security checkpoints. You are reminded that Local Rule 5073-1 **restricts the entry of cellular telephones** and, except in Orlando, computers into the Courthouse absent a specific order of authorization issued beforehand by the presiding judge. Due to heightened security procedures, persons must present photo identification to enter the Courthouse.

---

Soneet R. Kapila, as the duly appointed Chapter 11 Trustee for the estate of Universal Health Care Group, Inc., which entity serves as the sole member of American Managed Care, LLC (the "Trustee"), moves for entry of an order approving a settlement agreement with BankUnited, N.A. and the Florida Department of Financial Services, as Receiver for Universal Health Care, Inc. and Universal Health Care Insurance Company, Inc. (the "Motion").  The settlement agreement is attached as **Exhibit A** to this Motion.  Because a significant element of the settlement involves the coordination of litigation efforts between the Trustee and the Florida Department of Financial Services, some of which is already pending and is moving forward at a rapid pace, the Trustee requests that the Court shorten the time for considering the settlement so that it may be heard on September 12, 2014.

In support of the Motion, the Trustee states:

### Jurisdiction

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  The subject matter of this motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper in pursuant to 28 U.S.C. § 1408.

3.      The Motion is brought pursuant to Bankr. Rule 9019.

### Background

4.      Universal Health Care Group, Inc. ("Universal") filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code on February 6, 2013 (the "Petition Date").

5.      The Trustee's appointment was approved by Order of the Bankruptcy Court dated April 22, 2013 (Doc. No. 238).

6.      On May 3, 2013, the Trustee exercised the authority of Universal as the sole member of American Managed Care, LLC ("AMC") to file a Chapter 11 petition on behalf of AMC.

7.      Universal Health Care, Inc. ("UHC") and Universal Health Care Insurance Company, Inc. ("UHCIC") are wholly-owned subsidiaries of Universal.  The Florida Department of Financial Services serves as the receiver for both UHC and UHCIC (the "FDFS").

8.      In the Bankruptcy Court, the FDFS initiated a declaratory judgment action against the Trustee, Universal, AMC and BankUnited, N.A. (the "Bank") to determine that the Bankruptcy Court lacked jurisdiction to determine rights to certain tax refunds received by Universal in the approximate amount of $5.8 million.  *The Florida Department of Financial Services, as Receiver for Universal Health Care, Inc., and The Florida Department of Financial Services, as Receiver for Universal Health Care Insurance Company, Inc. v. Universal Health Care Group, Inc., et al.*, Adv. No. 8:13-ap-00392-KRM (the "Adversary Proceeding") (administratively consolidated with Adv. No. 8:13-ap-00436-KRM).  The Trustee filed a counterclaim against FDFS seeking a declaration that the Bankruptcy Court had jurisdiction to consider the parties' rights in the $5.8 million post-petition tax refund, as well as the prepetition refund in the amount of $11.15 million that had been transferred to UHCIC before any bankruptcy proceedings were initiated.  The Bank asserts a lien against all of the tax refunds at issue.

9.      During the course of the Adversary Proceeding, the Trustee on behalf of Universal and AMC filed claims in the receivership estates of UHCIC and UHC.  The Trustee's claims are as follows:

a. UHCIC

    1. Claimant: Universal

    Amount: 100% equity interest (100 shares non-certificated, 2,500,000 certificated)

    2. Claimant: Universal

    Amount: contingent, unliquidated [re: WARN Act claims]

    3. Claimant: Universal

    Amount: $16, 529,729 [transfers to insider UHCIC]

    4. Claimant: Universal

    Amount: contingent, unliquidated [re: medical provider claims]

    5. Claimant: AMC

    Amount: $18,549,102 [transfers to insider UHCIC]

    6. Claimant: AMC

    Amount: contingent, unliquidated [re: WARN Act claims]

    7. Claimant: AMC

    Amount: contingent, unliquidated [re: medical provider claims]

b. UHC

    1. Claimant: Universal

    Amount: 100% equity interest (126,250,000 non-certificated shares)

    2. Claimant: Universal

    Amount: contingent, unliquidated [re: WARN Act]

    3. Claimant: Universal

    Amount: contingent, unliquidated [re: medical provider claims]

4.  Claimant: AMC

   Amount: contingent, unliquidated [re: medical provider claims]

5.  Claimant: AMC

   Amount: $1,244,793.61 [transfers to insider UHC]

6.  Claimant: AMC

   Amount: contingent, unliquidated [re: WARN Act]

(collectively, the "Receivership Claims").

10.     The Trustee, the Bank and FDFS mediated the Adversary Proceeding with the Honorable Michael G. Williamson, serving as mediator.  The mediation lasted more than ten months.  As a result of the mediation, the Trustee, the Bank and FDFS reached a comprehensive settlement agreement that resolves the Adversary Proceeding, the Trustee's counterclaim, the Receivership Claims, and a myriad of other issues and claims by and between the parties.

11.     The terms of the settlement agreement are complex and terms of the agreement will have precedence over any summary contained in this Motion.  The settlement also should be considered in light of the prior agreement approved by the Bankruptcy Court between the Bank and the Trustee by Order dated October 24, 2013 (Doc. No. 585), and as modified by Order dated April 24, 2014 (Doc. No. 795) (the "Bank Settlement").  The Bank Settlement, *inter alia,* set the parameters and allocation of the tax refund recoveries by the Bank and the Trustee.

12.     Some of the key terms in the settlement for consideration by the creditors of Universal and AMC are as follows:

a.  All recoveries under the agreement will be split 50-50 between the bankruptcy estates of Universal and AMC.

b.  The Trustee will recover $934,000 of the funds currently held in escrow in the Universal debtor-in-possession account.  The Bank will receive $5.0 million.

c.  The Trustee will recover $1.85 million of the tax refunds held by FDFS.  The Bank will receive $3.8 million and FDFS will retain $5.5 million.

d.  $675,000 of the funds received by the Bank will be held in escrow by counsel for the Trustee pending confirmation of the Chapter 11 plans of Universal and AMC and will be available to pay administrative claims. The Bank in turn will have a subordinated contribution claim in this amount.  The Bank's claim will be subordinated to all Chapter 11 administrative claims and paid *para passu* with post-confirmation administrative expenses from the proceeds of post-petition recoveries.  No interest will be charged by the Bank for these funds.  If the bankruptcy cases are converted to Chapter 7, the $675,000 will be released to the Bank.

e.  FDFS shall allow AMC and UHCG to each have a $1.75 MM contingent claim in each of the UHC and UHCIC receiverships. Of this amount, up to $2,000 per employee terminated as a result of the UHC and the UHCIC receivership orders will have a Class 5 priority, pursuant to Fla. Stat. § 631.271(1)(e). The remaining claims shall be subordinated to the claims of policyholders but on par with general unsecured provider claims (Class 6). All of the above claims are contingent upon the final allowance of any employee WARN Act claims against AMC and/or UHCG, and any proceeds received from these claims will be earmarked in AMC and UHCG's Chapter 11 plans to pay the allowed WARN Act claims against AMC and UHCG, if any. If it is finally determined that neither

AMC nor UHCG have any WARN Act liability, the claims will be withdrawn from the UHC and UHCIC receiverships. AMC and UHCG shall also be allowed contingent provider claims to the extent that provider claims associated with UHCG's Florida subsidiaries (UHC and UHCIC) are paid with funds from the bankruptcy estates of AMC and/or UHCG.

f.  The following general unsecured claims shall be allowed to FDFS as Receiver: i) FDFS as Receiver of UHC shall have an allowed general unsecured claim of $1.0 million in the UHCG estate; ii) FDFS as Receiver of UHC shall have an allowed general unsecured claim of $1.0 million in the AMC estate; iii) FDFS as Receiver of UHCIC shall have an allowed general unsecured claim of $1.0 million in the UHCG estate; and iv) FDFS as Receiver of UHCIC shall have an allowed general unsecured claim of $1.0 million in the AMC estate.  None of these claims shall subject the FDFS as Receiver of said estates to the jurisdiction of the Bankruptcy Court, and the Bankruptcy Court order approving this Settlement shall so state. DFS as Receiver shall have no other claims in either UHCG's or AMC's bankruptcy cases

g.  The Bank will not pursue claims against officers and directors of Universal and its subsidiaries.  The Trustee and FDFS will cooperate in pursuing such claims and will split the net proceeds of any such recoveries 50-50.  The Bank will receive 15% of the Trustee's recoveries.

h.  The Trustee and FDFS will cooperate and jointly pursue any claims that might exist against Ernst &Young and Milliman, Inc. in connection with the accounting actuarial services provided to Universal and its subsidiaries.  The net proceeds of

any such claims will be split 50-50 between the Trustee and FDFS. The Bank will pursue its own claims and the Trustee agrees not to seek a bar order to preclude such claims by the Bank.

i.  AMC's remaining Receivership Claims, other than the WARN Act contingent claims and the contingent provider claims, shall be deemed to be Class 9 surplus contribution claims in the receiverships.

j.  The Receivership Claims of Universal, other than the WARN Act contingent claims and certain contingent provider claims, shall be deemed Class 11 equity claims in the receiverships.

k.  The Trustee will file disclosure statements and Chapter 11 plans for AMC and Universal on or before November 30, 2014.

13.    As part of the settlement, the Trustee and the Bank have consented to the entry of the agreed abstention order attached to the settlement as Exhibit A.

## Legal Argument

It is generally recognized that the law favors compromise of disputes over litigation.  *In re Blair*, 538 F.2d 849 (9th Cir. 1976).  Some courts have held that a proposed settlement should be approved unless it yields less than the lowest amount that the litigation could reasonably produce.  *In re New Concept Housing, Inc.*, 951 F.2d 932 (8th Cir. 1991).  In *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990), *cert. denied* 498 U.S. 959, 111 S. Ct. 387, 112 L.Ed.2d 398 (1990), the Court enunciated certain factors which must be considered in determining whether to approve a compromise, which are: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (d)

the paramount interest of the creditors and a proper deference to their reasonable views in the premises.  To approve the compromise, the Court need not determine which party would ultimately prevail, but only that the matter was open to reasonable doubt.  *Id.*

The Trustee has determined that the proposed settlement is not only in the best interest of the bankruptcy estates but essential to the success of these two Chapter 11 cases.  Having previously evaluated the Bank's claim of lien in the First Bank Settlement, the Trustee's ultimate recoveries from the tax refunds are capped by that agreement.  Moreover, the legal and factual issues involved in the tax refund litigation are difficult, complex and uncertain on both sides.  To date, the parties and the court have devoted substantial resources simply to determine the underlying jurisdictional issues associated with the dispute.  The applicable law is in a state of constant flux, particularly in the Eleventh Circuit.

The settlement was negotiated at arm's length in a judicial mediation conducted by the Honorable Michael G. Williamson over an extended period of time.  The Trustee submits that it represents a very good and fair result for both the Universal and AMC bankruptcy estates, particularly to the extent that it accomplishes far more than could be accomplished in protracted litigation.

Cooperation on potential D&O claims with FDFS is an essential component of the settlement and is necessary for the bankruptcy estates to succeed.  Otherwise, the Trustee and his professionals will be competing with the FDFS and its professionals over the same insurance proceeds and against the same defendants. Similarly, cooperation with FDFS to investigate and potentially pursue claims against Ernst & Young and Milliman is an efficient and practical solution to competing claims.

The settlement also ends very expensive and difficult litigation with FDFS. Such litigation is doubly expensive for the creditors of Universal. Because Universal is entitled to 25% of any equity surplus in the receiverships of UHC and UHCIC, pursuant to the First Bank Settlement, the creditors of Universal ultimately bear the costs of the bankruptcy professionals and the receivership professionals if protracted litigation were to proceed.

Recoveries by the Bank on its secured claim under the settlement will reduce its deficiency claim in both the Universal and AMC bankruptcy cases and ultimately should result in an increased distribution to other unsecured creditors on a pro rata basis.

Finally, the recognition of the Trustee's contingent WARN Act claims may provide a mechanism to resolve potentially expensive class action litigation with the former employees of AMC.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order approving the settlement attached as Exhibit A.

Dated: August 27, 2014

Respectfully submitted,

/s/ Roberta A. Colton
ROBERTA A. COLTON
Florida Bar No. 0371289
rcolton@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN,
FRYE, O'NEILL & MULLIS, PA
101 E. Kennedy Blvd., Suite 2700
Tampa, Florida 33602
Telephone: (813) 223-7474
Fax: (813) 229-6553
*Attorneys for the Chapter 11 Trustee and*
*American Managed Care, LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 27, 2014 a true and correct copy of the **MOTION TO APPROVE MEDIATED SETTLEMENT WITH BANKUNITED, N.A. AND THE FLORIDA DEPARTMENT OF FINANCIAL SERVICES, TO SHORTEN TIME FOR CONSIDERATION AND NOTICE OF HEARING** was forwarded by U.S. Mail, e-mail and/or through the Court's CM/ECF Noticing System on: **American Managed Care, LLC**, c/o Universal Health Care Group, Inc., Soneet R. Kapila, Chapter 11 Trustee, P.O. Box 14213, Fort Lauderdale, FL 33302; **Universal Health Care Group, Inc.** c/o Soneet R. Kapila, Chapter 11 Trustee, P.O. Box 14213, Fort Lauderdale, FL 33302; Jody Collins, **Florida Department of Financial Services**, 8240 N.W. 52nd Terrace, Suite 102, Doral, FL 33166 (jody.collins@myfloridacfo.com); **Harley E. Riedel, Esq., Barbara A. Hart, Esq., Russell M. Blain, Esq., and Scott A. Stichter, Esq.**, Stichter Riedel Blain & Prosser, 110 East Madison Street, Suite 200, Tampa, FL 33602; **Jeff J. Friedman, Esq.**, Katten Muchin Rosenman, LLP, 575 Madison Avenue, New York, NY 10022-2585; **Trustee Soneet R. Kapila**, Kapila & Company, 1000 South Federal Highway, Suite 200, Fort Lauderdale, FL 33316; **United States Trustee – TPA**, Timberlake Annex, Suite 1200, 501 E. Polk Street, Tampa, FL 33602; **Florida Department of Financial Services**, Messana, P.A., Thomas M. Messana, 401 E. Las Olas Blvd., Suite 1400, Fort Lauderdale, FL 33301 (tmessana@messana-law.com); **Frank P. Terzo, Esq.**, Gray Robinson, 1221 Brickell Avenue, Suite 1600, Miami, FL 33131; all parties on the attached **Local Rule 1007-2 Parties in Interest Lists**; and all registered **CM/ECF recipients**.

/s/ Roberta A. Colton
Attorney