# **<u>EXHIBIT A</u>**

## <u>SETTLEMENT AGREEMENT IN MEDIATION</u>

This Settlement Agreement (the "Agreement") is between Soneet Kapila, in his capacity as Chapter 11 Trustee (the "Trustee") of Universal Health Care Group Inc. ("UHCG") Case No. 8:13-bk-01520-KRM and American Managed Care LLC ("AMC"), Case No. 8:13-bk-05952-KRM; BankUnited, N.A., as Issuing Lender and as Administrative Agent ("BankUnited") on behalf of a bank group consisting of Capital Bank Financial Corp., Mercantil Commercebank, N.A., Banco De Creditor E Inversiones Miami Branch and Israel Discount Bank (the "Bank Group"); and the Florida Department of Financial Services ("DFS"), in its capacity as Receiver in Liquidation for Universal Health Care, Inc. ("UHC"), Case No. 2013-CA-000375, and Universal Health Care Insurance Company ("UHCIC"), Case No. 2013-CA-000358 and (collectively, the "Insurance Companies" or "DFS") (collectively with the Trustee, and BankUnited, the "Parties").

The Parties to the Agreement have entered into this Agreement pursuant to mediation as referred by the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the "Court") in *In re: Universal Health Care Group, Inc.,* Case No. 8:13-bk-01520-KRM, Jointly Administered with *In Re: American Managed Care, LLC,* Case No. 8:13-bk-05952-bk-KRM, and in *The Florida Department of Financial Services, as Receiver for Universal Health Care, Inc. & The Florida Department of Financial Services, as Receiver for Universal Health Care Insurance Company, Inc., v. Universal Health Care Group, Inc., et al, & American Managed Care, LLC and BankUnited, N.A.,* Adversary Proceeding No. 8:13-ap-00392-KRM, Administratively Consolidated with Adversary Case No. 8:13-ap-00436-KRM (the "Tax Refund Adversaries").

1. *Generally*

- This Agreement represents the complete agreement by which the Parties have resolved by settlement the following claims and disputes:

- All claims or proceedings that have been or could be asserted by the Trustee and/or BankUnited against DFS and vice versa;

- BankUnited's claims filed in the estate of UHCIC;

- The Trustee's claims filed in the estates of UHC and UHCIC;

- The Parties have participated in Judicial Mediation before the Honorable Michael G. Williamson.  This Settlement Agreement represents the culmination of the Judicial Mediation as to the matters dealt with herein.

- All the matters set forth herein, following execution by all of the parties, will be subject to the approval hereof by the United States Bankruptcy Court, Middle District of Florida (the "Bankruptcy Court"), and the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida (the "State Court" or the "Receivership Court"), The parties will take prompt actions to seek approval in said courts, but believe such approvals should be obtained no later than October 15, 2014.  The terms of this Agreement are as set forth below.

This Agreement is intended to directly benefit each and all of the Parties, who individually or collectively are entitled to enforce this Agreement.

2. *Background and Recitals.*

a.    DFS filed the Tax Refund Adversaries seeking a determination that a) the McCarran-Ferguson Act reverse preempts the Bankruptcy Code as it relates to the Parties' rights to the tax refunds, b) the Receivership Court holds exclusive jurisdiction to determine the Parties' rights to the tax refunds, and c) any acts seeking a determination by the Bankruptcy

2

Court of the Parties' rights to the tax refunds is a violation of the Florida Insurance Stay under Chapter 631, Florida Statutes.

      b.      At issue in the Parties' dispute was approximately $17 million in tax refunds received by UHCG, the parent company and consolidated filer, from the Internal Revenue Service attributable to tax years 2009-2011.

      3.     *Settlement Terms.*

      In full settlement, the Parties agree as follows:

a.      DFS relinquishes and waives any rights to the 2011 post-petition tax refund and any pre-petition cash held by the Trustee in the aggregate amount of $5.934 million allowing the Trustee and BankUnited to retain such amount. The Trustee retains $934,000 and BankUnited shall receive the remainder. The Order approving the 9019 settlement shall direct the Trustee to distribute $934,000 to UHCG and AMC and $5.00 million to the Bank and, further, grant the Bank stay relief to the extent necessary to allow the Bank to immediately enforce its secured interest with respect to such proceeds, which are currently held in an account at BankUnited.

b.      DFS shall retain $5.5 million in its possession of the $11.15 million constituting the pre-petition tax refund from the 2011 carryback to years 2009, 2010, and shall turnover to the Trustee the remainder of approximately $5.65 million (the "Released Tax Funds"). From the Released Tax Funds, the Trustee shall retain $1.85 million and then the Trustee shall immediately disburse to the Bank the remainder of the Released Tax Funds of approximately $3.8 million (the "Bank's Share"). The Order approving the settlement will also provide for stay relief permitting the Bank to immediately enforce its secured interest with respect to the Bank's Share; provided, however, the Trustee shall be authorized to disburse $675,000 of the Bank's Share  (the "Escrowed Funds") to his counsel, Trenam Kemker (the "Escrow Agent"). The

Escrow Agent shall hold the Escrowed Funds, subject to the Bank's continuing lien, for potential contribution, in whole or in part, to satisfy allowed administrative claims or fund litigation costs, in accordance with Paragraph 3(l), below.

c.      Upon the execution of the global settlement, BankUnited shall withdraw all of its claims, whether secured or unsecured, in the UHCIC and UHC receivership estate. BankUnited agrees it has no claim in the UHCIC and UHC receivership estates, except those that it has indirectly through its settlement with the Trustee (ECF # 585 and 795).

d.      All  claims of AMC against UHCIC and/or UHC other than those in paragraph 3(f), below, shall be deemed allowed as Class 9 surplus or contribution note claims, pursuant to Fla. Stat. sec. 631.271(a)(1)(i), and the remaining claims of UHCG shall be deemed allowed as Class 11 equity claims, pursuant to Fla. Stat. sec. 631.271(a)(1)(k).

e.      The following general unsecured claims shall be allowed to DFS as Receiver: i) DFS as Receiver of UHC shall have an allowed general unsecured claim of $1.0 million in the UHCG estate; ii) DFS as Receiver of UHC shall have an allowed general unsecured claim of $1.0 million in the AMC estate; iii) DFS as Receiver of UHCIC shall have an allowed general unsecured claim of $1.0 million in the UHCG estate; and iv) DFS as Receiver of UHCIC shall have an allowed general unsecured claim of $1.0 million in the AMC estate.  None of these claims shall subject the DFS as Receiver of said estates to the jurisdiction of the Bankruptcy Court, and the Bankruptcy Court order approving this Settlement shall so state.  DFS as Receiver shall have no other claims in either UHCG's or AMC's bankruptcy cases.

f.      DFS shall allow AMC and UHCG to each have a $1.75 MM contingent claim in each of the UHC and UHCIC receiverships. Of this amount, up to $2,000 per employee terminated as a result of the UHC and the UHCIC receivership orders will have a Class 5 priority, pursuant to

Fla. Stat. sec. 631.271(1)(e). The remaining claims shall be subordinated to the claims of policyholders but on par with general unsecured provider claims (Class 6). All of the above claims are contingent upon the final allowance of any employee WARN Act claims against AMC and/or UHCG, and any proceeds received from these claims will be earmarked in AMC and UHCG's Chapter 11 plans to pay the allowed WARN Act claims against AMC and UHCG, if any. If it is finally determined that neither AMC nor UHCG have any WARN Act liability, all of the above claims will be withdrawn from the UHC and UHCIC receiverships. AMC and UHCG shall also be allowed contingent provider claims to the extent that provider claims associated with UHCG's Florida subsidiaries (UHC and UHCIC) are paid with funds from the bankruptcy estates of AMC and/or UHCG.

g.      i) If the insurer (RSUI) is still willing to do so, the parties will attempt to schedule a mediation with respect to the D&O action within 30 days of entry of the last order approving this Settlement, and all parties shall be permitted to attend.  If a settlement results from the mediation, the Trustee and DFS will split the proceeds of any recovery after payment of Aaron Behar P.A.'s fees and costs.  If the mediation does not prove successful, or the insurer is unwilling to go forward with mediation, the Trustee and DFS will enter into a cooperation agreement to split 50/50 the proceeds (after payment of fees and costs) of the actions against the D&O's.  ii) Additionally, and independent of the foregoing, the Trustee and DFS will enter into a cooperation agreement to split 50/50 the proceeds of the actions against Milliman and Ernst & Young ("E&Y").  The Trustee and the Bank are satisfied with DFS's counsel, the firm of Aaron Behar, P.A., such that the Trustee will agree to utilize jointly the firm of Aaron Behar, P.A. to prosecute all pending D&O actions.  In turn, provided that DFS is satisfied that the firm of Genovese, Joblove and Battista, P.A. is capable and sufficiently experienced to adequately

prosecute the Milliman and E&Y actions, DFS and the Trustee will utilize the Genovese firm for the prosecution of all such actions.  The Bank will cease its prosecution efforts against the D&O's in consideration for receiving 15% of the Trustee's net recovery from the proceeds of the D&O action.  However, DFS and the Trustee will acknowledge the Bank's right to pursue E&Y and Milliman under separate legal theories than those advanced by the Trustee and DFS and that those actions will remain intact such that the Bank will be permitted to prosecute them separate and apart from the Trustee and DFS.  In furtherance of the foregoing, absent the express approval of the Bank, the Trustee shall not pursue any bar order preventing claims against E&Y or Milliman in connection with any plan of liquidation for the Debtors.

h.      Upon a completion of a global settlement executed by the parties, BankUnited, the Trustee and DFS will request from the court that it shall make findings in the order approving the 9019 settlement that the court shall no longer have to render an opinion on the McCarran Ferguson Act but rather will abstain from making any decisions on pending motions for summary judgment and the parties in turn shall agree to a dismissal of the adversary, with all parties to bear their own costs. The parties agree that the Order is a material term and as such, the Order must be entered in substantially the form attached hereto as Exhibit "A."

i.      As part of the settlement, the Trustee and the Bank will agree to cease any and all efforts to exercise any rights either party may have to place the Florida receiverships into bankruptcy.

j.      The Trustee and BankUnited shall suggest a qualified provider to assist DFS in recovering the IPA/MSO risk group receivables of UHC and UHCIC.  DFS may accept or decline the offered provider within ten (10) business days of receipt of the name of said provider

6

and any information regarding said entity, or request an alternate name until an acceptable provider is approved by DFS.  DFS' approval shall not be unreasonably withheld.  DFS shall give the provider access to its current work papers and documents (electronic or paper) relating to the IPA/MSO risk group receivables of UHC and UHCIC, if any, not including the receivables owed by AFGC, to determine if a suitable service agreement can be arranged by and between the provider and DFS either on a contingency or fee for service basis, for the purpose of assisting DFS in its recovery efforts of these receivables.  The provider's role will be to review in some instances and in other cases develop the procedures and or the analysis necessary to complete the medical fund risk sharing surplus (deficit) amount owed to DFS as Receiver. Information to be shared should include but not be limited to an analysis of the members assigned to at risk group providers excluding AFGC, the revenue allocable to the risk group providers from CMS (including allocable MRA, RX, and retroactivity receivables), reinsurance revenue received for those members assigned to the risk group providers, and all the medical claims relating to the members such risk group providers (including paid and yet to be adjudicated by DFS). The provider shall also be given an opportunity to review the procedures in place utilized by Optum for collection and recovery of MRA and other receivables due from CMS, however, the provider will not have authority to modify the agreement with Optum or the procedures in place utilized by Optum in any way.

k.      DFS will meet with Sam Hammer at mutually convenient time(s) to discuss potential additional MRA and any other Risk based receivables from CMS, with the Bank determining at its sole discretion the amount of money it shall pay Sam Hammer to assist on the collection of these receivables. DFS will not be responsible for paying Mr. Hammer's fees for any such meeting(s).

l.      To the extent the Trustee requires additional funds in order to confirm a liquidating plan under Section 1129 of the Bankruptcy Code for UHCG or AMC the Escrow Agent shall be authorized to release up to the full amount of the Escrowed Funds in satisfaction of allowed Chapter 11 administrative claims against the Debtors.  Any remaining Escrowed Funds, after the payment of Chapter 11 Administrative Claims shall be transferred to the Liquidating Agent and held for the post confirmation litigation costs by the Liquidating Trusts. To the extent that UHCG and/or AMC uses the Escrowed Funds to confirm a liquidating plan or for post confirmation litigation costs, the Bank shall be repaid such amounts (without interest) *para passim* with any post confirmation administrative claims from the first recoveries of the Liquidating Trust, but not including the recoveries described in Paragraph 3 (contingent WARN Act recoveries) above. The Trustee shall file a plan and disclosure statement for UHCG and AMC by November 30, 2014. BankUnited shall cooperate with the Trustee to confirm the plans as soon as practical and this settlement agreement shall be incorporated into the Chapter 11 plans for UHCG and AMC.  If the Chapter 11 cases of UHCG and AMC are converted, the Escrowed Funds shall be paid to the Bank upon the entry of a final orders of conversion.

m.      DFS shall continue to provide financial statements to the Trustee and the Bank for both receiverships.

n.      Any funds received by the Trustee pursuant to this Agreement shall be split 50/50 between the estates of UHCG and AMC.

o.      The settlement agreement is subject to approval by both the Bankruptcy Court and the Receivership Court.  The Trustee and DFS each agree to advance a motion seeking approval

8

from their respective court promptly. BankUnited will cooperate and support approval. Any disputes regarding this Agreement that involve DFS shall be in the Leon County Circuit Court. Any disputes between the Bank and the Trustee that do not in any way involve DFS shall be resolved by the Bankruptcy Court.

p. The obligations of the Parties are expressly conditioned upon approval by the Bankruptcy Court and the Receivership Court of this Agreement by appropriate Order.  All parties shall seek to obtain such approval as rapidly as possible.  Each of DFS and the Trustee agree that they shall cooperate in requesting the courts to approve this Agreement, as written.

4.  *Basis of Settlement*.

This Agreement is entered into by the Parties in settlement of disputed claims based upon numerous factors, including the costs and expense of litigation, the delay of litigation, and the risks of litigation.  This Agreement is not intended, and shall not be construed, to inure to the benefit of any person or entity not a Party.

5.  *No Admission.*

No party admits any fact or inference as part of this settlement. Other than for purposes of enforcement in the Bankruptcy Court and/or Leon County Circuit Court, nothing in this settlement shall be used in any Court proceeding by any party, and the Order approving this settlement shall so provide. The parties acknowledge that the facts are in dispute and this Agreement and/or the settlement has not established or adjudicated any facts.

6.  *Entire Agreement.*

This Agreement shall constitute the entire agreement among the parties hereto with respect to the matter set forth herein.  No party shall be deemed to have drafted this Agreement,

which has been drafted cooperatively by the Parties. No prior drafts of this Agreement exchanged between the parties shall be used in construing the terms of this Agreement.

7.  *Further Assurances.*

The Parties agree that they shall provide all assistance reasonably requested by any other Party in connection with carrying out the terms, intent and purposes of this Agreement.  In particular, the Parties agree (i) that they will proceed expeditiously to seek the approval of the Bankruptcy Court and the Receivership Court as soon as possible and no later than October 15, 2014, (ii) that they will cooperate with all other Parties in that regard, and (iii) that they will not interpose any objections to the approval of this Agreement as written and executed by the Bankruptcy Court and the Receivership Court.

8.  *Notices.*

Notices permitted or required to be given under this Agreement shall be given in writing and shall be delivered by regular U.S. Mail, by E-Mail, or by certified mail with return receipt requested, addressed as provided below.  Notices addressed and mailed as provided herein shall be deemed received by the addressee(s) five (5) days after being placed in the mail.  Proof of mailing shall be required should any party demonstrate notice was not received.  Notices shall be addressed as follows, or to such other addresses as the respective parties may later designate in written notices given for such purpose:

If to the Trustee:

Soneet Kapila
1000 South Federal Highway, Suite 200
Ft. Lauderdale, FL 33316
skapila@kapilamukamal.com

with copies to:

Roberta Colton, Esq.
Trenam Kemker

101 E. Kennedy Boulevard, Suite 2700
Tampa, FL 33602
RColton@trenam.com

If to BankUnited, to:

Frank P. Terzo, Esq.
GrayRobinson
401 E. Las Olas Blvd
Ft. Lauderdale, Fl 33301
frank.terzo@gray-robinson.com

If to DFS, to:

Sha'Ron James, Division Director, or her successor or designee
2020 Capital Center SE
Alexander Building, 3rd Floor
Tallahassee, FL 32301
Sha'Ron.James@myfloridacfo.com

With copies to:

Thomas Messana, Esq.
Messana P.A.
401 E. Las Olas Blvd., Suite 1400
Ft. Lauderdale, FL 33301
tmessana@messana-law.com

13.    *Counterparts; Facsimile and e-mail Execution.*

This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement.  Delivery of en executed counterpart of this Agreement by facsimile or e-mail shall be equally effective as delivery of a manually executed counterpart of this Agreement.  Any party delivering an executed counterpart of this Agreement by facsimile or e-mail also shall deliver a manually executed counterpart of this Agreement, but the failure to deliver a manually executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

11

**IN WITNESS WHEREOF,** the parties have executed this Agreement, or have caused this Agreement to be executed by their duly authorized representatives, as of the 27th day of August, 2014.

_____

Sha'Ron James, Director
Division of Rehabilitation and Liquidation
Florida Department of Financial Services, as Receiver for
Universal Health Care, Inc.
Universal Health Care Insurance Company, Inc.

_____

SONEET KAPILA
CHAPTER 11 TRUSTEE
UNIVERSAL HEALTH CARE GROUP, INC.

_____

AMERICAN MANAGED CARE, LLC
SONEET KAPILA, as Chapter 11 Trustee for
Universal Health Group, Inc., the sole member
of American Managed Care, LLC.

_____

BANKUNITED
By:
Its:

12

**IN WITNESS WHEREOF**, the parties have executed this Agreement, or have caused this Agreement to be executed by their duly authorized representatives, as of the _____ day of August, 2014.


_____
Sha'Ron James, Director
Division of Rehabilitation and Liquidation
Florida Department of Financial Services, as Receiver for
Universal Health Care, Inc.
Universal Health Care Insurance Company, Inc.


_____
SONEET KAPILA
CHAPTER 11 TRUSTEE
UNIVERSAL HEALTH CARE GROUP, INC.


_____
AMERICAN MANAGED CARE, LLC
SONEET KAPILA, as Chapter 11 Trustee for
Universal Health Group, Inc., the sole member
of American Managed Care, LLC.


_____
BANKUNITED
By:
Its:

**IN WITNESS WHEREOF**, the parties have executed this Agreement, or have caused this Agreement to be executed by their duly authorized representatives, as of the _27_ day of August, 2014.


_____
Sha'Ron James, Director
Division of Rehabilitation and Liquidation
Florida Department of Financial Services, as Receiver for
Universal Health Care, Inc.
Universal Health Care Insurance Company, Inc.



_____
SONEET KAPILA
CHAPTER 11 TRUSTEE
UNIVERSAL HEALTH CARE GROUP, INC.



_____
AMERICAN MANAGED CARE, LLC
SONEET KAPILA, as Chapter 11 Trustee for
Universal Health Group, Inc., the sole member
of American Managed Care, LLC.


_____
BANKUNITED
By: _Scott Milchuk_
Its: _SVP_

12

# **<u>Exhibit A</u>**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| In re: | CHAPTER 11 |
| UNIVERSAL HEALTH CARE<br>GROUP, INC., | CASE NO. 8:13-BK-01520-KRM |
| AMERICAN MANAGED CARE, LLC | Jointly Administered with<br>Case No. 8:13-bk-05952-KRM |
| Debtor. | |

_____/

| | |
|---|---|
| THE FLORIDA DEPARTMENT OF FINANCIAL<br>SERVICES, AS RECEIVER FOR UNIVERSAL<br>HEALTH CARE, INC. & | LEAD ADVERSARY CASE NO.<br>8:13-ap-00392-KRM |
| THE FLORIDA DEPARTMENT OF FINANCIAL<br>SERVICES, AS RECEIVER FOR UNIVERSAL<br>HEALTH CARE INSURANCE COMPANY, INC., | |
| Plaintiffs, | |
| v. | |
| UNIVERSAL HEALTH CARE<br>GROUP, INC., et al, | |
| & | Administratively Consolidated<br>Adversary Case No. |
| AMERICAN MANAGED CARE, LLC and<br>BANK UNITED, N.A., | 8:13-ap-00436-KRM |
| Defendants. | |

_____/

## AGREED ORDER ABSTAINING FROM ADVERSARY PROCEEDING[1]

This matter came before the Court on, among other things,[2] (i) *Complaint for Declaratory Relief* (the "Complaint") (ECF No. 1); (ii) *Answer and Affirmative Defenses of Soneet R. Kapila, as Duly Appointed Chapter 11 Trustee for Universal Health Care Group, Inc. and On Behalf of American Managed Care, LLC* (the "Trustee's Answer") (ECF No. 14); (iii)

---

[1] The Court notes with favor that the Receiver, the Trustee, and BankUnited have come to an amicable resolution of the disputes. This Order is a product of such resolution.

[2] Including court papers: (ECF No. 53); (ECF No. 72); (ECF No. 73); (ECF No. 76); (ECF No. 77); (ECF No. 78); (ECF No. 81); (ECF No. 93); (ECF No. 94); (ECF No. 96); (ECF No. 97); (ECF No. 101); (ECF No. 102); and (ECF No. 108).

*Answer and Affirmative Defenses of BankUnited, N.A. to Complaint for Declaratory Relief* (the

"BankUnited Answer") (ECF No. 23); (iv) *Trustee's Counterclaim for Declaratory Judgment*

(the "Trustee Counterclaim") (ECF No. 62); and (vi) *Motion to Dismiss and/or Abstain* (the

"Plaintiff's Motion to Dismiss/Abstain from Counterclaim") (ECF No. 69). Having reviewed the

record before it, agreement of the parties and otherwise being fully advised, for the reasons set

forth herein, this Court **ABSTAINS** from hearing this adversary proceeding.

## Background

Universal Health Care Group, Inc. ("Universal") was an insurance holding company.

Universal and American Managed Care, LLC ("AMC") are Chapter 11 debtors in the above-

captioned jointly administered main bankruptcy case (the "MC"). Universal Health Care, Inc.

("UHC") and Universal Health Care Insurance Company, Inc. ("UHCIC") (together, the

"Receivership Entities") were subsidiaries of Universal authorized to do business under Title

XXXVII of the Florida Statutes (the "Florida Insurance Code"). The Florida Department of

Financial Services (the "Receiver") was appointed as Receiver over the Receivership Entities to

administer their estates (the "Receivership Estates") in the liquidation proceedings (the

"Receivership Proceedings") pending before the Circuit Court of the Second Judicial Circuit in

and for Leon County, Florida (the "State Court"), by entry of those certain orders of appointment

(respectively, the "UHC Receivership Order" and the "UHCIC Receivership Order", attached as

Exhibits A and B to MC ECF No 215).

This dispute centers upon a sum of approximately $5.8 million (the "$5.8 Million Tax

Refund") that the Trustee[3] is holding and a sum of approximately $11 million (the "$11

---

[3] The "Trustee" shall mean Soneet Kapila in his capacity as Chapter 11 Trustee for the bankruptcy estates of
Universal and AMC.

Million") that the Receiver[4] is holding. The Receiver commenced this adversary proceeding against the Trustee and BankUnited, N.A. ("BankUnited"), seeking a declaratory judgment that the Florida Insurance Code's exclusive grant of jurisdiction to the State Court to determine the relative rights and interests to property comprising the Receivership Estate 'reverse preempted' the jurisdiction of all other courts (including this Bankruptcy Court) by operation of the McCarran-Ferguson Act. The Trustee filed a counterclaim seeking, among other things, a declaratory judgment determining which portion of the $11 Million, if any, constitutes property of the bankruptcy estates of Universal and AMC.

### Analysis

With respect to the $11 Million in the Receiver's possession, the Court concludes that abstention is appropriate, particularly in view of the McCarran-Ferguson Act.

The McCarran-Ferguson Act provides, "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b).

"[A] federal statute is reverse preempted under the McCarran-Ferguson Act if (1) the federal statute in question does not specifically relate to the business of insurance,[5] (2) the state statute was enacted for the purpose of regulating the business of insurance,[6] and (3) the federal

---

[4] The "Receiver" shall mean the Florida Department of Financial Services, as court-appointed Receiver for the Receivership Entities.

[5] It is indisputable that the Bankruptcy Code does not specifically relate to the business of insurance. *Logan v. Credit Gen. Ins. Co. (In re PRS Ins. Grp., Inc.)*, 294 B.R. 609, 612 (Bankr. D. Del. 2003) ("The first factor is met here. . . . we conclude that the Bankruptcy Code does not specifically relate to the business of insurance."); *Wagner v. Amwest Ins. Grp., Inc. (In re Amwest Ins. Grp., Inc.)*, 285 B.R. 447, 452 (Bankr. C.D. Cal. 2002) ("it is clear that the Bankruptcy Code in general, and § 541 which defines property of the bankruptcy estate in particular, does not relate to the business of insurance").

[6] "Florida has enacted 'a complex regulatory scheme, supervised by the state court and central to state interests,' for regulating and liquidating domestic insurance companies . . . The Uniform Insurers Liquidation Act, as adopted in

statute would invalidate, impair or supersede the state statute[7]" (the "McCarran-Ferguson Factors"). *Logan v. Credit Gen. Ins. Co. (In re PRS Ins. Grp., Inc.)*, 294 B.R. 609, 612 (Bankr. D. Del. 2003).

The Florida Insurance Code grants, among other things, exclusive jurisdiction over insurance delinquency proceedings to the State Court, imposes a stay of any and all action against property of the Receivership Estates, and provides a particular priority scheme for claimants of the Receivership Estate.

This Court's exercise of jurisdiction over the $11 Million and application of the Bankruptcy Code may invalidate, impair, or supersede provisions of the Florida Insurance Code – the statutory scheme created by the State of Florida for the purpose of regulating the business of insurance – in violation of the McCarran-Ferguson Act.

Additionally, as is further discussed herein, it is appropriate to abstain from determining the parties' rights in this matter based on the several abstention statutes and doctrines. [8]

---

Florida and elsewhere, therefore 'operates pursuant to an express federal policy of noninterference in insurance matters.'" *Sabato v. Fla. Dep't of Ins.*, 768 F. Supp. 1562, 1565 (S.D. Fla. 1991) (citations omitted). *See also U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 505-506 (1993) (in the context of the McCarran-Ferguson Act, finding that a state's insurance liquidation statute was enacted for the purpose of regulating the business of insurance because "the primary purpose of a statute that distributes the insolvent insurer's assets to policyholders in preference to other creditors is identical to the primary purpose of the insurance company itself: the payment of claims made against policies.").Without determining whether the Receivership Entities are 'domestic insurance companies' as contemplated by Section 109(b)(2) of the Bankruptcy Code, the Florida Insurance Code is a state statute enacted for the for the purpose of regulating the business of insurance.

[7] Without making any determination as to the substance of the dispute, this Court notes that the McCarran-Ferguson Act is a key consideration of its decision that abstention is appropriate here.

[8] Abstention is appropriate under each and all of the following abstention doctrines: 28 U.S.C. § 1334(c)(2) 'mandatory abstention'; 28 U.S.C. § 1334(c)(1) 'permissive abstention'; the *Younger* Abstention; the *Burford* Abstention; and the *Colorado River* Abstention, and notions of comity, and to avoid the potential for inconsistent rulings between this Court and the State Court. Additionally, where, as here, the State Court applied the Florida Insurance Code to the Receivership Entities and determined that it has exclusive jurisdiction over all Receivership Estate assets, the *Rooker-Feldman* Doctrine prohibits this Court from considering same. *In re Holler*, 342 B.R. 212, 219-20 (Bankr. W.D. Pa. 2006) ("The [Rooker-Feldman] doctrine, which arises from 28 U.S.C. § 1257, prevents "inferior" federal courts from sitting as appellate courts for state court judgments."); *see McCarty v. Grguric*, 6:06CV1444ORL19JGG, 2007 WL 2900329 at *6 (M.D. Fla. Oct. 2, 2007) ("A federal district court may not sit in an appellate capacity to review the decisions of *any* state courts.").

With respect to the $5.8 Million Tax Refund in the Trustee's possession, although the Court may have jurisdiction, it is also nevertheless appropriate to abstain.

<em>Abstention</em>

Based upon, among other things, the questions raised by the application of the McCarran-Ferguson Act upon the Florida Insurance Code and this Court's jurisdiction, as stated here and in the foregoing, this Court finds it most appropriate to abstain from reaching a final determination on the merits in this case under each and all of the following abstention doctrines: 28 U.S.C. § 1334(c)(2) 'mandatory abstention'; 28 U.S.C. § 1334(c)(1) 'permissive abstention'; the *Younger* Abstention; the *Burford* Abstention; and the *Colorado River* Abstention, and notions of comity, and to avoid the potential for inconsistent rulings between this Court and the State Court.

This Court's discretion to abstain is broad and the decision is final.[9] *See In re United Container LLC*, 284 B.R. 162, 176 (Bankr. S.D. Fla. 2002); *Milian v. Wells Fargo & Co.*, 507 B.R. 386, 391 (S.D. Fla. 2014).

### 1. Mandatory Abstention

This Court finds that mandatory abstention is applicable as all of the mandatory abstention factors are met. 28 U.S.C. § 1334(c)(2) (courts must abstain from hearing a state court claim if the following requirements are met: (1) The claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a noncore proceeding. That is, it is related to a case under title 11 but does not arise under or arise in a case under title 11; (3) an action has been commenced in state court; and (4) the action could be timely adjudicated in state court.).

---

[9] A bankruptcy court's decision to remand a matter to state court can only be appealed to the Bankruptcy Appellate Panel or United States District Court. *McCarthy v. Prince (In re McCarthy)*, 230 B.R. 414, 417 (B.A.P. 9th Cir. 2006). Similarly, appellate courts may not generally review an order abstaining under 28 U.S.C. 1334(c)(1),(2). *In re Dow Corning Corp.*, 113 F.3d 565, 569 (6th Cir. 1997).

2. Permissive Abstention

This Court finds that permissive abstention is applicable and therefore abstains from entering a determination on the merits in this case. In particular, of the permissive abstention factors articulated in *FCCI Commercial Insurance Co. v. Armour*, 2012 WL 4208056 at *3 (M.D. Fla. 2012), (quoting *In re United Container LLC*, 284 B.R. 162, 175-78 (Bankr. S.D. Fla. 2002)), this Court finds that comity[10] weighs heavily in favor of this Court's exercise of permissive abstention.

3. 'Other' Abstention Doctrines

Additionally, this Court finds that the *Younger*, *Burford*, and *Colorado River* abstention doctrines are all applicable in this matter and abstains under these doctrines. *See Younger v. Harris*, 401 U.S. 37 (1971). *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943). *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800 (1976).

Here, this Court's determination with respect to the $11 Million will necessarily interfere with the Receivership Cases. At a minimum, such determination would interfere with the State Court's exclusive jurisdiction over the Receivership Case, may violate the Florida Insurance Stay, and affect property of the Receivership Estate. *See* Fla. Stat. § 631.021(6) ("Upon the issuance of an order of conservation, rehabilitation, or liquidation, the Circuit Court of Leon County shall have exclusive jurisdiction with respect to assets or property of any insurer subject

---

[10] As in *In re SOL, LLC*, 419 B.R. 498, 510 (Bankr S.D. Fla. 2009), the dispute here "involves solely state court issues, relates to property located within the state of Florida, and no core issues are involved, comity weighs heavily in favor of abstention . . . 'when a proceeding is based on state law and bears a limited connection to a debtor's bankruptcy case, abstention is particularly compelling.'" (citations omitted). *See also Golf Club at Bridgewater, L.L.C. v. Whitney Bank*, 8:12-CV-01604-EAK, 2013 WL 1193182 (M.D. Fla. Mar. 22, 2013) (affirming bankruptcy court's jurisdiction because permissive abstention was not raised by the appellant or the bankruptcy court *sua sponte*, but stating that "[w]hile the Bankruptcy Court undoubtedly had core subject matter jurisdiction to enter its Order, the Order may unnecessarily complicate matters in the state court litigation. . . this Court cautions against the broad application of bankruptcy court jurisdiction in matters such as the one at hand, and encourages bankruptcy courts to consider permissive abstention *sua sponte*").

to such proceedings and claims against said insurer's assets or property." *See also* Receivership Orders at ¶ 1 ("This Court has jurisdiction pursuant to Section 631.021(1), Florida Statutes").

Abstention is "appropriate 'when 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Sabato v. Fla. Dep't of Ins.*, 768 F. Supp. 1562, 1565 (S.D. Fla. 1991) (quoting *Rindley v. Gallagher*, 929 F.2d 1552 (11th Cir. 1991)(applying the *Burford* abstention).

Rather than disrupt the Receivership Proceedings, this Court will abstain to permit the State Court to adjudicate the remaining disputes, if any.  The State Court is an adequate forum to protect the parties' rights and to preserve the state's efforts of creating consistent insurance liquidation policy. *See 31 Foster Children v. Bush*, 329 F.3d 1255, 1279 (11th Cir. 2003) ("'Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights.' A federal court 'should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.'" (citations omitted)).

### Conclusion

One court should determine the allocation of both the $5 Million Tax Refund and the $11 Million, rather than run the risk of inconsistent rulings. The $5 Million Tax Refund and the $11 Million are distinct assets. However, the $11 Million and the $5 Million Tax Refund are subject to similar claims by the same parties (the Receiver, the Trustee, and BankUnited).

To avoid the risk of inconsistent rulings, and for all the reasons stated herein, this Court

abstains from hearing this adversary proceeding and the Trustee's Counterclaim.

**DONE and ORDERED** in Chambers at Tampa, Florida on _____.


_____
K. RODNEY MAY
UNITED STATES BANKRUPTCY JUDGE


Attorney Roberta A. Colton is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

8